UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JANE DOE 1, et al., | ) | Civil Action No.  24-2743 (RBW) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM
IN SUPPORT**

By and through the undersigned counsel, Plaintiffs respectfully submit this opposition to
Defendant's Motion to Dismiss.  D.E. 26.  For the reasons stated below, Defendant's Motion
should be denied.

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW ................................................................................................. 3

FACTUAL BACKGROUND .............................................................................................. 4

ARGUMENT ...................................................................................................................... 5

   A.   The Discretionary Function Exception Does Not Bar Claims When Plaintiffs Have Alleged

   Violations of a Mandatory Policy ................................................................................... 5

      a.   The Conduct at Issue is a Refusal to Follow Mandatory Policies ............................... 6

      b.   Step One: Refusal to Follow Internal Policies is Not Discretionary ........................... 9

      c.   Step Two: There is no Public Policy of Failing to Investigate Credible Threats of Sex

      Trafficking and Child Abuse ..................................................................................... 14

      d.   Although Not Needed, Limited Jurisdictional Discovery Could Clear Up Which Mandatory

      Policies Exist ............................................................................................................ 15

   B.   The Statute of Limitations Does Not Bar these Claims Because Plaintiffs Plausibly Alleged they

   did not Discover Their Injury Due to the FBI's Negligence Until 2023 ................................. 16

   C.   Venue is Appropriate in this District Because Plaintiffs Allege that Tortious Conduct Occurred

   Here ........................................................................................................................... 18

   CONCLUSION ................................................................................................................. 21

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                        **Page(s)**

*Appleton v. United States*,
    69 F. Supp. 2d 83 (D.D.C. 1999) ............................................................................ 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 13

*Bancroft Global Development v. United States*,
    330 F. Supp. 3d 82 (D.D.C. 2018) ........................................................................... 3

*Banneker Ventures, LLC v. Graham*,
    798 F.3d 1119 (D.C. Cir. 2015) ........................................................... 4, 8, 13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 4, 6

*Berkovitz v. United States*,
    486 U.S. 531 (1988) ......................................................................................... 9, 14

*Bregman v. Perles*,
    747 F.3d 873 (D.C. Cir. 2014) .............................................................................. 16

*Briscoe v. United States*,
    268 F. Supp. 3d 1 (D.D.C. 2017) .......................................................................... 16

*Connors v. Hallmark & Son Coal Co.*,
    935 F.2d 336 (D.C. Cir. 1991) .............................................................................. 16

*Cope v. Scott*,
    45 F.3d 445 (D.C. Cir. 1995) ..................................................................... 10, 14, 15

*Darby v. U.S. Dep't of Energy*,
    231 F. Supp. 2d 274 (D.D.C.2002) ..................................................................... 4, 20

*Davis v. United States*,
    196 F. Supp. 3d 106 (D.D.C. 2016) ....................................................................... 15

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C.Cir.1996) ................................................................................ 17

*Fisher Bros Sales, Inc. v. United States*,
   46 F.3d 279 (3d Cir. 1995) ........................................................................... 9

*Fleming v. United States*,
   69 F. Supp. 2d 837 (W.D. Va. 1999) ........................................................... 10

*Frasure v. United States*,
   256 F. Supp. 2d 1180 (D. Nev. 2003) .......................................................... 10

*General Dynamics Corp. v. United States*,
   139 F.3d 1280 (9th Cir. 1998) ................................................................... 8, 9

*Goldlawr, Inc. v. Heiman*,
   369 U.S. 463(1962) ...................................................................................... 20

*Herbert v. Nat'l Acad. of Sciences*,
   974 F.2d 192 (D.C. Cir. 1992) ...................................................................... 4

*In re Marjory Stoneman Douglas High Sch. Shooting FTCA Litig.*,
   482 F. Supp. 3d 1273 (S.D. Fla. 2020) ....................................................... 12

*Limone v. United States*,
   579 F.3d 79 (1st Cir. 2009) ........................................................................... 6

*Macharia v. United States*,
   334 F.3d 61 (D.C. Cir. 2003) ................................................................ 10, 16

*Martinez v. United States*,
   587 F. Supp. 2d 245 (D.D.C. 2008) ........................................................... 10

*McMichael v. United States*,
   856 F.2d 1026 (8th Cir. 1988) .................................................................... 10

*Mesa v. United States*,
   837 F. Supp. 1210 (S.D. Fla. 1993) ........................................................... 11

*Sanchez v. United States*,
   600 F.Supp.2d 19 (D.D.C. 2009) ............................................................... 20

*Shuler v. U.S.*,
   531 F.3d 930 (D.C. Cir. 2008) .................................................................... 11

*Spotts v. United States*,
   562 F.Supp.2d 46 (D.D.C. 2008) ............................................................... 18

*United States v. Gaubert,*
   499 U.S. 315 (1991) ............................................................................................ 14

*United States v. Kwai-Fun Wong,*
   575 U.S. 402 (2015) ............................................................................................ 16

*United States v. Philip Morris, Inc.,*
   116 F.Supp.2d 131 (D.D.C. 2000) ...................................................................... 3

*Wesberry v. United States,*
   205 F. Supp. 3d 120 (D.D.C. 2016) .................................................................... 15

*Zelaya v. United States,*
   781 F.3d 1315 (11th Cir. 2015) .......................................................................... 11

## **Statutes**

28 U.S.C. § 1402(b) ................................................................................................ 18

## **Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ 13

Fed. R. Civ. P. 12(b)(1).......................................................................................... 4

Fed. R. Civ. P. 12(b)(3).......................................................................................... 4

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 3

## INTRODUCTION

Defendant's motion to dismiss should be denied in its entirety as it does not come close to meeting its burden to overcome Plaintiffs' plausible allegations at this early pre-discovery phase and even if it did, there are clear factual disputes that warrant discovery rather than dismissal.

For instance, Defendant claims that venue should be transferred from Washington D.C. because "it certainly appears unlikely" that the FBI's Washington Field Office was involved. Def. Br. at 10. While the way the Defendant framed that statement indicates that there is no substance behind it whatsoever as no affidavit, declaration nor evidence was submitted to support such a claim, even with the minimal information available at this time it is clear that Defendant's claim is false. As set forth below, the FBI's own publicly available records establish that this criminal investigation involved the FBI Washington D.C. office, as it explicitly provides, "Criminal investigation at Washington D.C." The Epstein investigation involved the Crimes Against Children Unit based in Washington, D.C.

```
To:  Criminal Investigative  From:  Miami
Re:  31E-MM-108062, 05/02/2007


LEAD(s):

Set Lead 1:  (Action)

    CRIMINAL INVESTIGATIVE

    AT WASHINGTON, DC

        Approval request for the travel of SSA
        to Miami Division, PBCRA from 05/09/2007 to 05/18/2007
    for the purpose of assisting with indictment preparation,
    document preparation, chart finalization and to provide
    testimony at detention hearing.

    ♦♦
```

b6 -2
b7C -2

**FEDERAL BUREAU OF INVESTIGATION**

Precedence: ROUTINE                    Date: 04/20/2007

To:  Criminal Investigative    Attn: Crimes Against Children Unit
                               UC                            b6 -1, -2
                               IA                            b7C -1, -2

From:  Miami
         PB-2/PBCRA
         Contact: SA

Approved By:

Drafted By:

Case ID #: 31E-MM-108062    (Pending)

Title:  JEFFREY EPSTEIN;

        WSTA - CHILD PROSTITUTION

Synopsis: To request Intelligence Analyst (IA)              travel    b6 -2
to Palm Beach RA to assist with analysis for captioned case.          b7C -2

Details:  On            the Federal Bureau of Investigation (FBI),    b3 -1
Palm Beach County Resident Agency (PBCRA), opened an                 b6 -1, -3
investigation involving billionaire Jeffrey Epstein and captioned    b7C -1, -3
subjects.  The investigation involves                                b7E -4




        FBI Miami, PBCRA, requests the travel of IA                  b6 -2
        Crimes Against Children Unit (CACU), for the purpose of      b7C -2
assisting with            for captioned case.                        b7E -1

As such, the request for venue transfer and Defendant's claim that the Washington D.C.

office was not involved should be denied.  The Washington D.C. office clearly was involved in

this investigation as it is the acts and omissions during this investigation which are the basis of

Plaintiff's claims.  Further, Defendant's overlong brief is heavy on citations but light on relevance.

As a skim through the table of authorities will show, Defendant cited dozens of cases; nearly all

of which are superfluous or irrelevant.  But there is a single, simple flaw in Defendant's argument: At this stage, Plaintiff's allegations are entitled to a presumption of truth.

Plaintiffs have alleged that the FBI negligently violated its own internal, mandatory policies and failed to follow-up on multiple, credible tips of sex trafficking, rape, and child abuse. Plaintiffs have also alleged that they did not discover the FBI's negligence until recently.

At every turn, Defendant seeks to jump ahead to the merits and dispute the *facts* surrounding the FBI's negligence.  That is impermissible at this point in the proceedings, before any discovery, and before Plaintiffs have had an opportunity to develop the factual record. Moreover, the FBI does not actually provide any contradictory facts.  It argues from silence and broadly disputes Plaintiffs' presumptively true allegations without so much as a declaration in support.

Based on the allegations—which are all that matters in the absence of contradictory facts— Plaintiffs have adequately demonstrated that the discretionary function exception to FTCA claims does not apply, the statute of limitations does not bar any claims, and this is the appropriate venue for this case.  Defendant's premature motion should be denied.

## **STANDARD OF REVIEW**

"A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim." *Bancroft Global Development v. United States,* 330 F. Supp. 3d 82, 90 (D.D.C. 2018).  At this stage, a court must presume that the complaint's factual allegations are true and construe them liberally in favor of the plaintiffs. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F.Supp.2d 131, 135 (D.D.C. 2000).  The factual allegations "must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

When evaluating a Rule 12(b)(1) motion, a court must accept "the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

"In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C.2002). To prevail on a motion to dismiss for improper venue, a defendant must present facts sufficient to defeat a plaintiff's assertion of venue. *Id.* at 277. Defendant does not provide any facts here, not one.

## FACTUAL BACKGROUND[1]

This case is about the FBI's years-long refusal to investigate Jeffrey Epstein's notorious sex trafficking, child abuse, and rape, even though it had received repeat credible information warning of these actions. For the horrific results of the FBI's negligence, Plaintiffs respectfully refer the Court to the pleadings.

What is relevant for this motion is the FBI's failure to follow its mandatory policies relating to handling tips and conducting investigations. SAC ¶ 5. Plaintiffs have provided some examples of the FBI's failure to follow these policies, including: failing to properly respond to a sex-abuse

---

[1] This section (and memorandum) refers to the Second Amended Complaint ("SAC"). As Defendant explains, Plaintiffs were entitled to make this amendment without leave of court because Defendant had not yet served a responsive pleading. Def. Br. at 37 n. 7. Plaintiffs further agree with Defendant that the purpose of the amendment was to add parties and whether it or the First Amended Complaint is the operative pleading does not impact the substantive analysis of this motion.

report received from Maria Farmer in 1996; failing to properly respond to tips and reports regarding sex trafficking of minors and sexual abuse of minors from 1996 until 2005; failing to investigate reports of a 14-year-old being sexually abused in Epstein's Palm Beach mansion; failing to interview the victims whose names were on a list of "Important Messages" from 2001 to 2005; prematurely closing an FBI file in the face of evidence of sex trafficking and minor sexual abuse; ignoring reports of suspicious banking; and failing to follow up on federal passport fraud. SAC ¶ 112.

In allowing all this to happen, the FBI violated its own internal policies governing investigations, including a requirement to thoroughly investigate credible tips and communicate information to local law enforcement.  SAC ¶¶ 5; 102-03.  But ultimately the full picture of the FBI's negligence and the extent to which it deviated from mandatory internal policies remains within the exclusive control of Defendant.  The FBI continues to hide this information from the public and, astoundingly, from the Attorney General herself, who has publicly stated her frustration with the FBI's refusal to release this information.  By correspondence dated February 27, 2025, Attorney General Pam Bondi wrote to FBI Director Patel that "[D]espite my repeated requests, the FBI never disclosed the existence of these files." Merson Decl., Ex. 1 (citing letter available at https://www.justice.gov/ag/media/1391331/dl?inline (last visited March 11, 2025).

## **ARGUMENT**

### A.  The Discretionary Function Exception Does Not Bar Claims When Plaintiffs Have Alleged Violations of a Mandatory Policy[2]

---

[2] In a footnote, Defendant raises several other arguments that it *may* raise in future motions.  Def. Br. at 1 n. 1. While Plaintiffs do not concede that those arguments require dismissal, Plaintiffs take no position on them here and respectfully request the opportunity to oppose any such arguments at the appropriate juncture.

The discretionary function exception does not mandate dismissal at this stage. Defendant's lengthy excursus on the Federal Tort Claims Act ("FTCA") correctly outlines that (1) this Court must focus on the specific conduct at issue; and (2) the Supreme Court has outlined a two-step analysis to determine whether the exception applies. Defendant then goes on to ignore the specific conduct at issue and argue that the FBI's actions always fit within the discretionary function exception. That is wrong. Plaintiffs have alleged undisputed, injurious violations of non-discretionary obligations and that is what matters at this point. *See Twombly*, 550 U.S. at 556 (holding that complaints should proceed "even if it strikes a savvy judge that actual proof of the [alleged] facts is improbable, and that a recovery is very remote and unlikely.") (internal quotation marks omitted).

### a.  <u>The Conduct at Issue is a Refusal to Follow Mandatory Policies</u>

Defendant cited six cases from various circuits for the straightforward proposition that this Court must determine exactly what conduct is at issue. Def. Br. at 21. Defendant then goes on to ignore the conduct at issue and apply the discretionary function exception to hypothetical conduct. Defendant's citation to *Limone* is apt. Def. Br. at 21. There, the First Circuit *agreed* that the discretionary function exception did not apply because the defendant (also the FBI) had framed the conduct at issue at too high a level of abstraction:

> Viewed from 50,000 feet, virtually any action can be characterized as discretionary. But the discretionary function exception requires that an inquiring court focus on the specific conduct at issue. Here, when the FBI's conduct is examined in context, warts and all, any illusion that the conduct was discretionary is quickly dispelled.

*Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) (internal citations omitted).

The same is true here. Plaintiffs have alleged that:

- Between 1996 and 2005, the FBI continued to receive direct reports, complaints, and tips concerning the illegal sex trafficking of women and underage minors, sex abuse, and human rights violations committed by Jeffrey Epstein and his associates. In response, the FBI failed to act upon and investigate the complaints and tips and failed to comply with protocol and guidelines notwithstanding credible reports of solicitation of child prostitution and sex trafficking. (SAC ¶ 73).

- The FBI and its agents deviated from its own rules and regulations required: to timely investigate the reports, tips, and evidence it had of rampant sexual abuse and sex trafficking by Epstein and others and to protect the young women and children who fell victim to him for 20+ years. (SAC ¶ 5).

- When the FBI seized the messages, the FBI failed to interview all the appropriate potential victims and did not contact all the victims even though the FBI had their names and telephone numbers. A comprehensive investigation was not conducted in violation of FBI protocols despite cell phone numbers listed on the seized "important messages." (SAC ¶ 87).

- The FBI's guidebook explains tips "must all be taken seriously and thoroughly evaluated." (SAC ¶ 99).

- The FBI had non-discretionary obligations, governed by established protocols, to handle and investigate tips concerning potential and ongoing underage child erotica, rape, sex with minors, and human sex trafficking in a reasonable manner and to act against Epstein and to prevent him from committing repeated crimes. Yet, contrary to its own established

rules, the FBI breached its duty, failed to take appropriate action and botched and covered up investigations for two decades. (SAC ¶ 102).

- The FBI was negligent when it neither responded nor appropriately investigated the allegations, failed to notify the appropriate FBI field office or state or local authorities of the allegations, and failed to take other steps to mitigate the ongoing threat posed by Epstein and associates. (SAC ¶ 103).

In short, the conduct at issue is the FBI's failure to follow its mandatory policies of investigating credible tips of criminal sex trafficking. That is what Plaintiffs have alleged and what must be deemed true for purposes of this motion. *Banneker Ventures, LLC*, 798 F.3d at 1129.

None of Defendant's arguments to the contrary change that. For instance, Defendant offers a non-sequitur causation argument, suggesting that "whether the FBI negligently carried out preliminary mandatory actions, however, is not relevant . . . ." Def. Br. at 21. Yet that is *exactly* the inquiry at this stage. Moreover, Defendant's assertion is both extraordinarily grim and implausible. Defendant speculates that if the FBI *had* fully investigated Jeffrey Epstein's sex trafficking and child abuse in accordance with its policies it would have *chosen* not to stop it. This Court need and should not accept that speculation.

The cases that Defendant cites for its causation theory all involved plaintiffs suing a different party than the one which actually caused the injury. In one, the plaintiff sued an agency tasked with auditing defense contracts when the real harm was caused by a separate federal prosecution. *General Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998). The court rightly observed that a plaintiff cannot "circumvent" the discretionary function exception by framing claims against an entirely separate agency. *Id*. at 1283. And the court similarly

appreciated that if applied "too broadly, the discretionary function exception could swallow up a large part of the FTCA itself. No doubt many actions within an agency pass through the hands of somebody with some discretion at some stage." *Id*. at 1284.

The same is true of *Fisher Bros Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995). There, the plaintiffs misdirected a complaint about the FDA Commissioner's policy choice to the allegedly faulty lab data provided by department functionaries. *Id*. at 282. The court held that the plaintiff could not base FTCA claims on negligent data-preparation when that data only served as the evidentiary basis for the Commissioner's allegedly harmful policy decision to deny entry to Chilean fruit. *Id.* at 285.

Here, Plaintiffs bring suit against the FBI for the FBI's failures. This Court need not and should not accept the premise that any tortious failure to act could conceivably have been superseded by some discretionary deus-ex-machina. Doing so would mean that *any* action could be characterized as discretionary, no matter how implausible. That would defeat the FTCA altogether.

### b.  Step One: Refusal to Follow Internal Policies is Not Discretionary

At step one of the *Gaubert* analysis, courts consider whether the challenged conduct "involves an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The discretionary function exception does not apply when the government actor failed to "perform its clear duty" or "act in accord with a specific mandatory directive." *Id.* at 545. Defendant misleadingly suggests that any conduct that is not subject to a statute, regulation, or policy automatically is necessarily "discretionary." Def. Br. at 25. That is a misstatement of the court's observation in *Macharia*, which continued that, even in the absence of a statute, regulation, or

policy, the court still has an independent duty to assess whether the conduct at issue involves an element of judgment. *Macharia v. United States*, 334 F.3d 61, 65 (D.C. Cir. 2003). And even then, "not all actions that require choice—actions that are, in one sense, 'discretionary'—are protected as 'discretionary functions' under the FTCA." *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995).

Here, Plaintiffs have alleged that Defendant failed to follow a mandatory directive to take steps to investigate Mr. Epstein's crimes. *See* SAC at ¶ 122. That is the kind of non-discretionary conduct that is covered by the FTCA, even if Defendant prematurely disputes as a factual matter what those directives were. *See McMichael v. United States*, 856 F.2d 1026, 1033 (8th Cir. 1988) (denying motion to dismiss FTCA claim where defendant did not follow mandatory policy directive); *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (denying motion to dismiss FTCA claim because defendant did not meet its burden of demonstrating that the discretionary function exception applied); *Fleming v. United States*, 69 F. Supp. 2d 837, 841 (W.D. Va. 1999) (denying motion to dismiss FTCA claim where plaintiffs pointed to internal memo as evidence of mandatory policy).

Defendant essentially argues that any action taken by the FBI involves some element of discretion. To back up its argument, Defendant cites to several illustrative cases in which the discretionary function exception applied. Each is distinguishable. For instance, Defendant cites to *Martinez v. United States* to suggest that the FBI's "dereliction of duty" can never be actionable. Def. Br. at 23. *Martinez* involved a pro se complainant who requested $100 million in damages because the FBI did not take unspecified action in response to her phone calls about unspecified threats. *Martinez v. United States*, 587 F. Supp. 2d 245, 246 (D.D.C. 2008). The plaintiff did not

allege that any internal policies were violated nor that the threats were credible. The citation to *Zelaya* is also misplaced. The plaintiffs in that case did not allege that the SEC violated any internal policies governing investigations; indeed, the SEC in fact investigated the Ponzi scheme at issue. *Zelaya v. United States*, 781 F.3d 1315, 1319-20 (11th Cir. 2015).

Similarly, the citation to *Mesa* is misplaced. Def. Br. at 22-23. The defendants in that case were exercising an arrest warrant against the wrong person and plaintiffs did not allege that they violated any specific, mandatory, or internal policies in doing so. *Mesa v. United States*, 837 F. Supp. 1210, 1212 (S.D. Fla. 1993). The same was true of the plaintiff in *Shuler*, who "fail[ed] to point to any specifically prescribed government policy." *Shuler v. U.S.*, 531 F.3d 930, 934 (D.C. Cir. 2008). As such, the FBI's claim that whether and how to investigate are grounded in public policy is completely unsupported and not true. All parties agree here that failure to follow a directive or policy is an exemption to discretionary function.

Here, Plaintiffs have alleged that the FBI ignored its mandatory policies to investigate credible tips of sex trafficking, rape, and child abuse. While the FBI has all this information, Plaintiff does not because discovery has not commenced. Plaintiff has plead allegations in the Complaint based on what is publicly available. Defendant does not provide *any* evidence disputing those allegations; not an affidavit, not a declaration. Instead, Defendant ignores those allegations and counters that Plaintiffs "do not cite any policies because they cannot." Def. Br. at 26. If Defendant means that there are *no* policies the FBI must follow, that representation is transparently false. For example, the Attorney General's Guidelines for Domestic FBI Operations provide one such mandatory directive: "[w]hen credible information is received by an FBI field office concerning serious criminal activity not within the FBI's investigative jurisdiction, the field office

11

shall promptly transmit the information or refer the complainant to a law enforcement agency having jurisdiction." Merson Decl., Ex. 2 (citing Guidelines § VI(C)(2)).  And in a 2024 hearing before Congress, the then-current Director of the FBI testified that "how we handle evidence recovered in a criminal investigation *has all kinds of rules that apply to it*." *Oversight of the Federal Bureau of Investigation Before the H. Comm. on the Judiciary*, 118th Cong. 38 (July 24, 2024) (statement of Christopher A. Wray, FBI Director) (emphasis added).

If, incredibly, Defendant still contends that the FBI does not have internal policies governing investigations, then it can raise that factual dispute at summary judgment.  That is the appropriate point to determine whether the discretionary function exception applies when Plaintiffs have alleged undisputed facts indicating that it should not.  Indeed, although Defendant declines to cite it, that is exactly how the court resolved this same issue when private parties brought FTCA claims against the FBI for a similar failure to investigate credible tips about Nikolas Cruz, before he murdered 17 people in a school shooting.  *In re Marjory Stoneman Douglas High Sch. Shooting FTCA Litig.*, 482 F. Supp. 3d 1273, 1277 (S.D. Fla. 2020).  There, too, the plaintiffs alleged that the FBI breached its mandatory policies in failing to follow up on credible tips, leading to a preventable and horrifying national tragedy.  *Id.*  The court denied motions to dismiss the case based on the discretionary function exception due to the existence of factual disputes as to the scope of those internal policies.  *Id.*  As in that case, what matters now are Plaintiffs' well-pleaded allegations that the FBI did violate its mandatory policies.

And that allegation is plausible; indeed, this is not the first time that the FBI negligently ignored reports and tips of sexual abuse leading to FTCA liability.  For example, the Justice Department announced on April 23, 2024 that it settled 139 administrative claims arising from

allegations of sexual abuse committed by former physician and USA Gymnastics official Lawrence Gerard Nassar. The government even commented on its negligence that "these allegations should have been taken seriously from the outset." Justice Department Reaches Civil Settlement with Victims Abused by Larry Nassar.

Defendant casts aside Plaintiffs' allegations as conclusory. Not so. Factual allegations are not "conclusory" just because a Defendant disputes their accuracy. Defendant hides behind the "conclusory" accusation to prevent this Court from accepting a factual allegation as true. Unlike, for instance, an allegation of fraud, these allegations need not be made with particularity. *See Banneker Ventures, LLC*, 798 F. 3d at 1129 ("Except for allegations of fraud or mistake, *see* Fed. R. Civ. P. 9(b), we do not require "detailed factual allegations" for a claim to survive a motion to dismiss.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs have alleged that the conduct at issue was a failure to follow mandatory policies and failed to respond to repeated tips of sex abuse of children and young women. Plaintiffs have pleaded the allegations; however the exact protocols, rules, practices, and procedures are in the hands of Defendant and must come from discovery. That is all that is necessary at this point. *See Appleton v. United States*, 69 F. Supp. 2d 83, 94 (D.D.C. 1999) (denying motion to dismiss based on discretionary function exception because factual disputes existed as to the scope of the government's discretion in the challenged conduct).

Nor does it matter that the discretionary function exception is a jurisdictional bar to discovery. That does not mean that this Court can disregard the pleadings. Moreover, Defendant has not actually provided *any* evidence contradicting Plaintiffs' allegations; not an affidavit, not a declaration, not an exhibit. There is no factual dispute for this Court to evaluate. Plaintiffs have

alleged that the FBI failed to follow its mandatory policies and that factual allegation is entitled to a presumption of truth absent contradictory evidence. *Banneker Ventures, LLC*, 798 F.3d at 1129.

### c. Step Two: There is no Public Policy of Failing to Investigate Credible Threats of Sex Trafficking and Child Abuse

As discussed above, mandatory policies cabin the FBI's discretion and prevent application of the discretionary function exception. But even if that were not true, Defendant failed at the second step. Again, Defendant argued against a strawman, ignored the conduct at issue, and focused on FBI activities at a hypothetically broad level.

Not all discretionary functions are exempt from FTCA liability. Even if the conduct does involve some element of judgment or choice, a court must still consider whether the "judgment is of the kind that the discretionary function exception was designed to shield," *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (quoting *Berkovitz*, 486 U.S. at 536). Only actions which are "within the range of choice accorded by federal policy and law and were the results of policy determinations," are exempt from liability. *Berkovitz*, 486 U.S. at 538.

"Only discretionary actions of greater significance—those grounded in "social, economic, or political goals"—fall within the protection of the statute." *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995) (quoting *Gaubert*, 499 U.S. at 323). Defendant cannot hide behind a high level of generality. According to Defendant, if this case must be dismissed, then ignoring its own rules to bury credible tips of sex trafficking and forced prostitution of children is an action of "greater significance" and grounded in "social, economic, or political goals."

Here, too, "the government appears to argue that decisions that involve choice and the faintest hint of policy concerns are discretionary and subject to the exception." *Cope*, 45 F.3d at 449. "Th[at] approach, however, would not only eviscerate the second step of the analysis set out

in *Berkovitz* and *Gaubert*, but it would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity." *Id*.

Defendant cites cases demonstrating that the Department of Justice's decision to prosecute an individual are quintessentially discretionary. Def. Br. at 24; 27. That is true but irrelevant. As Defendant itself notes, the "gravamen" of Plaintiffs' claims is a failure to appropriately investigate credible threats of crime. Def. Br. at 1. Once the Court zooms in on the actual conduct at issue, it becomes clear that the FBI's conduct cannot be susceptible to any policy considerations. There is no conceivable public policy behind allowing a globetrotting sex criminal to traffic children into prostitution. Nor can there be any "social, economic, or political goal" in ignoring mandatory steps to evaluate credible information regarding child abuse and sex trafficking.

Overall, when the actual conduct at issue is evaluated, Plaintiffs have described non-discretionary failures to follow mandatory policies and actions which are not susceptible to policy analysis. The discretionary function exception does not apply and dismissal is unwarranted.

### d. <u>Although Not Needed, Limited Jurisdictional Discovery Could Clear Up Which Mandatory Policies Exist</u>

As a matter of law, Plaintiffs have overcome the discretionary function exception at this stage. However, to the extent the Court concludes that Defendant has raised a factual dispute as to the scope of the FBI's mandatory policies, Plaintiffs respectfully request the opportunity to conduct limited jurisdictional discovery in lieu of dismissal. Indeed, "[i]n the FTCA context, courts in this Circuit frequently grant jurisdictional discovery where plaintiffs have challenged the application of exceptions to the FTCA." *Wesberry v. United States*, 205 F. Supp. 3d 120, 135 (D.D.C. 2016) (collecting cases); *Davis v. United States*, 196 F. Supp. 3d 106, 120 (D.D.C. 2016) (referencing D.C. Circuit's liberal approach to jurisdictional discovery); "*Briscoe v. United States*,

268 F. Supp. 3d 1, 5 (D.D.C. 2017) (ordering jurisdictional discovery on discretionary function exception).  Indeed, that was the outcome in several of the cases Defendant cites in favor of summary dismissal.  *See, e.g.*, *Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003) (district court ordered three months of jurisdictional discovery prior to deciding motion to dismiss).  At a minimum, prior to dismissal, Plaintiffs should at least have an opportunity to confirm the unsubstantiated representations Defendant's counsel has made in its brief.

### B. The Statute of Limitations Does Not Bar these Claims Because Plaintiffs Plausibly Alleged they did not Discover Their Injury Due to the FBI's Negligence Until 2023

Defendant takes the same tack in arguing that the statute of limitations has run on Plaintiffs' claims:  ignore the allegations and engage in extra-record speculation.  Again, Defendant takes several pages to outline a straightforward legal standard:  the statute of limitations for FTCA claims can be equitably tolled if the Plaintiffs could not have discovered the tortious conduct through reasonable diligence.  *United States v. Kwai-Fun Wong*, 575 U.S. 402, 420 (2015) ("[T]he FTCA's time bars are nonjurisdictional and subject to equitable tolling.").  Defendant also correctly concedes that these claims are subject to the "discovery" rule, meaning that the claims did not accrue until Plaintiffs discovered their injury (i.e., the FBI's negligent refusal to follow its mandatory policies).  Def. Br. at 30 (citing *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991)).

Plaintiffs have plausibly alleged that they were not able to discover the cause of their injury—the FBI's failure to investigate—until recently.  *See* SAC ¶ 31.  At this stage, that suffices.  "Because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred."  *Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014).  At the motion to dismiss stage, "[c]ourts should hesitate to dismiss

16

a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.Cir.1996).  There is nothing on the face of the complaint which demonstrates that this action is time barred.

Whether this Court applies the discovery rule or the equitable tolling standard, the result is the same.  Plaintiffs could not reasonably have discovered the extent of the FBI's tortious failures until recently.  Defendant's exhaustive citations to caselaw and references to "extensive publicity" in news articles and other court cases are entirely irrelevant. *See* Def. Br. at 31-34.  All of Defendant's links to reports, articles, documentaries, and pleadings cover only Mr. Epstein's infamous misconduct. Defendant even suggests—inappropriately—that a pseudonymous plaintiff has spoken about her abuse publicly.  That does not matter.  Plaintiffs have never argued they were unaware of Mr. Epstein's horrifying behavior.  Plaintiffs know that better than Defendant since Plaintiffs themselves suffered horrific sexual abuse at his hands.

What Plaintiffs were *unaware* of was that the FBI had credible information about Mr. Epstein's actions yet violated its own policies in refusing to take any action.  Scattered references to the FBI's tangential involvement in documentaries could not have reasonably informed Plaintiffs that the FBI ignored its own mandatory policies and failed to investigate credible tips.

It does not "def[y] logic" that Plaintiffs were not aware of the FBI's colossally destructive failure to follow its own policies until the JP Morgan case.  Def. Br. at 17.  On the contrary, as recent events have made clear, the FBI's role in the Epstein debacle remains shrouded in mystery.  Indeed, in just the past several weeks, the Attorney General has demanded that the FBI reveal evidence that it has refused to disclose.  For example, Attorney General Bondi wrote just a few weeks ago that she "learned from a source that the FBI Field Office in New York was in possession

17

of thousands of pages of documents related to the investigation and indictment of Epstein. Despite my repeated requests, the FBI never disclosed the existence of these files." Merson Decl., Ex. 1 at 1. It is implausible to expect that Plaintiffs could have been more diligent and successful in unearthing this information than the Attorney General herself.

Based on both the face of the pleadings and an objective analysis, Defendant has not demonstrated that the statute of limitations bars Plaintiffs' claims and dismissal should not be granted on that basis.

## C. Venue is Appropriate in this District Because Plaintiffs Allege that Tortious Conduct Occurred Here

Defendant rightly observes that the appropriate venue for a Federal Tort Claims Act claim is "the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." Def. Br. at 8 (quoting 28 U.S.C. § 1402(b)). Defendant does not inform this Court, however, that "in considering a motion to dismiss for lack of venue, unless contradicted by an evidentiary showing, the court accepts the plaintiffs well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiffs favor, and resolves any factual conflicts in the plaintiffs favor." *Spotts v. United States*, 562 F.Supp.2d 46, 51 (D.D.C. 2008) (quotation marks omitted). Defendant does not provide any contrary facts. Instead, through links to websites and arguments in its brief, Defendant suggests that most of Mr. Epstein's conduct happened outside of this district. All that is irrelevant. It is the FBI's conduct, not Mr. Epstein's that is relevant here.

This Court can reasonably infer from Plaintiffs' allegations that the negligent decision-making in the Epstein investigation took place in this District. For instance, Plaintiffs allege that Mr. Epstein received "secret service clearance" to travel with a former President notwithstanding

the FBI's knowledge of credible information about his crimes.  SAC ¶ 74.  And the complaint outlines numerous international excursions, all of which the FBI can reasonably have monitored out of its headquarters, rather than just the Miami field office, as Defendant suggests.

That allegation is more than plausible.  Indeed, the FBI's own Vault records demonstrate that the criminal investigations into Epstein involved the Crimes Against Children Unit based in Washington D.C.  Merson Decl., Ex. 3 (citing document available at https://vault.fbi.gov/jeffrey-epstein/Jeffrey%20Epstein%20Part%2003/view).

Other of Defendant's representations are puzzling; Defendant attempts to flip the inferential standard upside down by claiming that "it certainly appears unlikely that the FBI's Washington Field Office would have any control or involvement into the purported investigation of criminal activity almost a thousand miles away." Def. Br. at 10-11.  Plaintiffs did not make any allegations about the "Washington Field Office" and indeed, the opposite conclusion is more likely given Epstein's globetrotting exploits.  *See* SAC ¶ 94 ("[T]he FBI was complicit in permitting the ongoing sex trafficking of minors and the rape and sexual abuse of girls and young women which occurred between New York, Paris, Palm Beach, the U.S. Virgin Islands, and many other locations.").  Moreover, these bizarre arguments are unaccompanied by any facts.  For instance, Defendant could have submitted a declaration that no one in FBI headquarters had any knowledge of the Epstein investigation.  Defendant's refusal to do so—when this information should theoretically be under Defendant's exclusive control—further supports an inference that negligence occurred here in D.C.

The same is true of the allegation that the FBI is headquartered in this District.  Defendant incorrectly contends that Plaintiffs rely exclusively on the location of the FBI's headquarters to

establish venue.  Def. Br. at 8; 12.  That is a reference to the venue provision of the complaint and is not the sum total of the allegations regarding venue.  Instead, the presence of the FBI's headquarters in this District supports an inference that negligent failures took place here given that multiple FBI offices were involved, and the crimes took place across state lines and across the world.

Despite the evidence in the FBI Vault that a unit based in this District was directly involved, the FBI's own website states that "the work we do at the FBI Headquarters in Washington directs, organizes, and coordinates FBI activities around the world" and lists its mission-critical work to include ensuring "centralization and coordination between divisions."[3]

All this put together supports the inference, based on the allegations in the Second Amended Complaint, that the negligent failure to investigate occurred, at least in part, in this district.  In any event, Defendant has not offered any facts defeating Plaintiffs' assertion of venue and accordingly cannot prevail in moving to dismiss on that basis.  *Darby*, 231 F. Supp. 2d at 277.  But even if this Court disagrees about this being an appropriate venue, dismissal would be an inappropriate response.  "Generally, the interest of justice requires transferring [  ] cases to the appropriate judicial district rather than dismissing them." *Sanchez v. United States*, 600 F.Supp.2d 19, 23 (D.D.C. 2009) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67(1962)).  There are at least two other judicial districts to which this case can be transferred.  One of the Plaintiffs resides in the Southern District of Florida.  Even according to Defendant, it is both permissible under the FTCA's venue provision for the case to be brought there and convenient in terms of

---

[3] FBI Headquarters, available at https://fbijobs.gov/locations/headquarters.

collecting evidence and witnesses.  While this case should not be transferred according to the law and facts of this case, Plaintiffs accordingly respectfully request, in the alternative of dismissal if this Court finds transfer is warranted, that the case be transferred there or, failing that, to the Southern District of New York.

<b><u>CONCLUSION</u></b>

Accordingly, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety.  In the alternative, Plaintiffs respectfully request that the Court order limited jurisdictional discovery, transfer this case to the Southern District of Florida, or transfer this case to the Southern District of New York.

Respectfully submitted,

By: _____

**Jordan Merson, Esq.**
**Jennifer Plotkin, Esq.** (*pro hac vice*)
*Attorneys for Plaintiffs*
950 Third Avenue, 18th Floor.
New York, New York 10022
Telephone: (212) 603-9100
Facsimile: (347) 441-4171
Email: jmerson@mersonlaw.com
Email:jplotkin@mersonlaw.com