```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3    * * * * * * * * * * * * * * *    )
      JANE DOE 1, et al.,              )    Civil Action
 4                                     )    No. 24-02743
                   Plaintiffs,         )
 5                                     )
         vs.                           )
 6                                     )
      UNITED STATES OF AMERICA,        )    Washington, D.C.
 7                                     )    June 16, 2025
                   Defendant.          )    9:35 a.m.
 8                                     )
      * * * * * * * * * * * * * * *    )
 9


10

                   TRANSCRIPT OF TELEPHONIC MOTION HEARING
11                 BEFORE THE HONORABLE REGGIE B. WALTON
                    UNITED STATES SENIOR DISTRICT JUDGE
12


13

      APPEARANCES:
14
      FOR THE PLAINTIFFS:       JORDAN K. MERSON, ESQ.
15                              JENNIFER C. PLOTKIN, ESQ.
                                MERSON LAW, PLLC
16                              950 Third Avenue
                                18th Floor
17                              New York, New York 10022

18    FOR THE DEFENDANT:        BRENDA A. GONZALEZ HOROWITZ, ESQ.
                                UNITED STATES ATTORNEY'S OFFICE FOR
19                               THE DISTRICT OF COLUMBIA
                                601 D Street, Northwest
20                              Washington, D.C. 20530

21    REPORTED BY:              LISA EDWARDS, RDR, CRR
                                Official Court Reporter
22                              United States District Court for the
                                 District of Columbia
23                              333 Constitution Avenue, Northwest
                                Room 6706
24                              Washington, D.C. 20001
                                (202) 354-3269
25
```

```
1            THE COURTROOM DEPUTY:  This is Civil Action

2    24-2743, Jane Doe, et al., versus the United States of

3    America.

4            May I have counsel identify yourselves for the

5    record, beginning with Plaintiffs' counsel.

6            MR. MERSON:  Sure.  Good morning, your Honor.

7    This is Jordan Merson from Merson Law for the Plaintiffs in

8    this matter.

9            THE COURT:  Good morning.

10           MS. PLOTKIN:  This is also Jennifer Plotkin from

11   Merson Law for Plaintiffs as well.

12           THE COURT:  Good morning.

13           MS. PLOTKIN:  Good morning.

14           MS. GONZALEZ HOROWITZ:  Good morning, your Honor.

15   This is Assistant U.S. Attorney Brenda Gonzalez Horowitz on

16   behalf of the United States.  And also on the line is

17   attorney from the FBI Meghan Campbell.

18           THE COURT:  Good morning.

19           This matter is here on the Defendant's motion to

20   dismiss, alleging that this is not the appropriate venue for

21   the litigation of this case.

22           And yet I would ask Plaintiffs' counsel, what

23   would be the predicate for this case being appropriately

24   venued in the District of Columbia?  I understand none of

25   the alleged events took place here; none of the Plaintiffs
```

1    reside here.  And the only nexus as I understand is the fact

2    that the FBI is headquartered here.  But cases in this

3    district have held that that's not a sufficient basis for

4    the District of Columbia being the appropriate venue.  Here,

5    if there was evidence, it seems to me it would have been the

6    field offices where these alleged events took place, which

7    would have had the responsibility of investigating these

8    allegations.

9            But I'll hear from Plaintiffs' counsel as to why

10   venue is appropriate here in D.C.

11           MS. PLOTKIN:  Your Honor, this is Jennifer Plotkin

12   from Merson Law.

13           At the outset, D.C. is the epicenter of where this

14   FBI investigation had been taking place.  As we know just

15   recently, all of the evidence concerning Epstein over the

16   past 20 years has been sent to D.C. and all the evidence is

17   in D.C.

18           I do know that in the beginning, when the

19   investigation started, in around 2005, the Crimes Against

20   Children Unit was involved.  And that is in D.C.  That is in

21   my opposition papers.  And, you know, the FBI vault is

22   mostly sealed.  I don't have access to all the records.  But

23   from what I can see, the Crimes Against Children Unit was

24   certainly involved.  There were tips concerning sex

25   trafficking and sex crimes against minors and young women.

1              Also, when the investigation occurred in 2008,

2      there was child sexual abuse materials.  And then the Child

3      Exploitation and Obscenity Section, called CEOS, would have

4      been involved and coordinated that material.  And that was

5      in D.C.

6              Furthermore, Epstein was sex-trafficking women

7      globally.  And it is our belief that the headquarters would

8      have been involved in overseeing the Florida field office

9      and also the New York field office, and they certainly would

10     have been involved.

11             THE COURT:  That's one --

12             MS. PLOTKIN:  I'm sorry.  One last thing.  I'm

13     sorry.

14             THE COURT:  That would be the situation in every

15     case involving these type of allegations.  I mean, many

16     times there are investigations conducted by the field office

17     and, you know, at some point the central office becomes

18     involved to some degree.  But if what you're saying is true,

19     then every case involving allegations of this nature would

20     be venued here in D.C.

21             MS. PLOTKIN:  I would argue, considering the

22     high-profile situation in this particular case, we're

23     dealing with a billionaire who was a registered sex offender

24     who continued to sex-traffic minors and young women for ten

25     years even after 2008.  D.C. was involved.

1          And I don't have all the materials because it's

2     mostly redacted, but I firmly believe that D.C. headquarters

3     was certainly involved in this case.  And this case should

4     be -- this case should be litigated in D.C.  This is where

5     all the evidence is.

6          I know that there was another case that was just

7     filed a week ago by Maria Farmer.  That's also in D.C.

8          And this really is the venue that makes the most

9     sense, your Honor, and I really think that this case should

10    stay here.

11         THE COURT:  But the only -- the evidence would

12    only be here because it was sent here by the field offices.

13    And that happens in a lot of situations because many of the

14    investigative arms of the FBI may be here in D.C., even

15    though the event itself and the evidence was generated

16    itself in another location.

17         MR. MERSON:  Judge, this is Jordan Merson.  If I

18    could just jump in on behalf of the Plaintiffs.

19         This case is a failure to follow protocols that

20    originated and were promulgated in Washington, D.C.  The

21    failure to follow up on policies and procedures was based on

22    a faulty or a nonexisting criminal investigation.

23         We already have a document that is on Page 1 of

24    our memorandum of law.  And it literally says "criminal

25    investigative at Washington, D.C."

1          That's the issue in this case.  The issue in the

2     case is that Washington, D.C., did not properly enforce

3     policies and procedures.  That's why this case belongs in

4     Washington, D.C.

5          In other cases, there is not a document that

6     explicitly says "criminal investigative at Washington, D.C."

7          THE COURT:  Well, you know, I've been doing this

8     work for a long time.  And I just have never seen a

9     situation, you know, of this nature where venue was deemed

10    to be appropriate in D.C. because to some degree individuals

11    here in D.C. may have touched the case.  That happens in a

12    lot of cases, especially, like you say, high-profile cases.

13    Probably always the central office is going to in some way

14    be involved.

15          But I'll hear from Government counsel.

16          MS. GONZALEZ HOROWITZ:  Good morning, your Honor.

17    This is AUSA Brenda Gonzalez Horowitz.

18          I have several responses to that.  So first of all

19    is that, regardless of which complaint the Court is

20    considering -- and I believe that the Court allowed the

21    amendment to go forward again, so the operative complaint

22    that we're discussing is the second amended complaint -- it

23    contains no link, not a single link, between Washington,

24    D.C., and the events that are alleged to have occurred in

25    Florida.

1          For the first time in opposition, Plaintiff now

2     pointed to this, you know, one-page memorandum which I think

3     has been grossly, you know, taken out of context to say

4     that, you know, D.C. was, you know, actively involved or

5     somehow managing or directing the scope of the

6     investigation.  That is not at all what that memorandum

7     says.  That one-page memorandum authorizes travel for one

8     special agent to go down to Florida one time back in 2007

9     and 2008.  That was the most that Plaintiffs were able to

10    muster in their opposition, which as I noted is not included

11    anywhere in the operative pleading.

12          So to the extent the Court even wants to consider

13    that allegation or, you know, that contention, it doesn't

14    demonstrate that headquarters was in any way, you know,

15    directing the scope of the investigation, was directing the

16    field agents to follow up or not follow up on tips that they

17    were receiving to, you know, interview certain witnesses or

18    not interview witnesses, which is really, you know, at the

19    heart of Plaintiffs' complaint, is that the FBI, you know,

20    didn't take seriously tips or other information that they

21    were receiving.

22          And there is just simply no link that, you know,

23    DOJ headquarters or FBI headquarters or anyone here in

24    Washington, D.C., was, you know, involved in whatever

25    investigation was going on in Florida, which, you know, I

1    think, as Plaintiffs recognize, the Miami field office was

2    the one that was involved in that.  And the U.S. Attorney's

3    Office in the Southern District of Florida was the one that

4    was involved ultimately, you know, in the non-prosecution

5    agreement that was reached with Mr. Epstein.

6           You know, I also just want to note that if it was

7    so apparent to Plaintiff that this case, you know, belongs

8    in Washington, D.C., as I think Ms. Plotkin, you know,

9    argued a moment ago, then I think that really begs the

10    question as to why it originated in New York.  You know, as

11    we noted in our papers, this action was originally filed in

12    the Southern District of New York, which makes sense,

13    because that is where the majority of the Plaintiffs reside.

14    That is where Epstein maintained an apartment.

15           You know, there was some allegation, as we noted

16    in our motion to dismiss, that, you know, in the complaint

17    filed in that district, there were several allegations as to

18    why venue was appropriate in New York.  They alleged, you

19    know, that there was, you know, investigations that occurred

20    arising out of the New York field office, that there was

21    specific, you know, involvement between FBI agents in

22    New York and Miami.

23           None of those allegations exist here, other than a

24    very conclusory statement that somehow, you know, FBI Main

25    or FBI -- it's not even clear whether we're talking about

1    headquarters or the Washington field office -- had any sort

2    of involvement in directing, you know, the scope of an

3    investigation that was happening thousands of miles away.

4              And I think the Court's instinct, you know, that

5    if we accepted that premise as true, then that would mean

6    that we would have venue in almost any, you know, court case

7    that was alleging something fairly similar, some sort of

8    failure to investigate.  And I don't think that's what the

9    venue provision was intended on doing.

10             THE COURT:  Any reply from Plaintiffs' counsel?

11             MR. MERSON:  I can reply, Judge.  This is Jordan

12   Person.

13             Simply because there are multiple acceptable

14   venues in a case doesn't mean this is the wrong one.  And

15   what we have learned since the New York filing is that this

16   investigation that is the crux of our complaint was run out

17   of Washington, D.C.  We --

18             THE COURT:  What's your basis for that, other than

19   this one document?

20             MR. MERSON:  I mean, that one document is pretty

21   strong.  I don't see how we're taking it out of context.

22   I'm literally quoting from it:  "criminal investigation at

23   Washington, D.C."

24             But we've also spoken with a former FBI agent who

25   has confirmed, yes, this would have been run out of

 1    Washington, D.C.

 2         So we've learned a lot since our initial filing.

 3    And, you know, if it was just that the FBI headquarters was

 4    in Washington, D.C., we wouldn't be suing there.  But there

 5    are many, many other circumstances that are different in

 6    this case from your other cases, with all due respect, that

 7    warrant this case being in Washington, D.C.

 8         THE COURT:  Well, I kind of disagree with your

 9    characterization, because in my experience -- and I've been

10    doing this for almost 50 years either as a federal

11    prosecutor or as a federal judge -- many times there are

12    investigations that are taking place in other parts of the

13    country.  But because the headquarters of the FBI is located

14    here, headquarters becomes involved to some degree.  But

15    that in my view doesn't necessarily mean that venue ends up

16    being vested here in the District of Columbia.

17         I mean, all of the work would have clearly been

18    done either in the Southern District of Florida, where these

19    events allegedly occurred, or in New York.

20         MR. MERSON:  But that's the point.  That's not

21    clear.  Because we have now this memo and we've now spoken

22    with somebody who says that's not the case.

23         And the venue provision is where Plaintiffs reside

24    or an act or omission complained of occurred.  And the act

25    or omission complained of occurred in Washington, D.C.

1          (Extraneous noise on the telephone line.)

2          MR. MERSON:  Am I still on?

3          THE COURT:  Is somebody on the line that should be

4    muted?

5          UNIDENTIFIED SPEAKER:  That was me, your Honor.

6    Sorry.

7          THE COURTROOM DEPUTY:  Yes, your Honor.  They have

8    been muted.

9          MR. MERSON:  Sorry about that.  I don't know where

10   I lost you.

11          But yeah.  I mean, the events complained of, the

12   act or omission complained of, occurred in Washington, D.C.

13   And if we refile in New York or we refile in Florida, we're

14   just going to hear that venue should be somewhere else.

15          So given the fact that we now have this document,

16   which says what it says, there's just no running away from

17   it.  I mean, I heard that we were misconstruing the

18   document.  Again, I quoted it.  We've now spoken with a

19   former FBI agent.

20          And, you know, according to *Spotts v. U.S.*, which

21   is a D.C. district court case from 2008, the complaint is

22   entitled to deference at this point.  If it turns out that

23   nothing was in D.C., and if there was, like, some sort of

24   declaration or affidavit that nothing occurred in

25   Washington, D.C., then I would still think there's an issue

1    of fact that would warrant denying this motion.

2            But there's nothing.  I mean, right now, we have

3    the memo; we have the FBI agent we've spoken with; and we --

4            THE COURT:  Do you have a declaration from him?

5            MR. MERSON:  No, but --

6            THE COURT:  And what is the basis of his

7    knowledge?  Does he have firsthand knowledge?  Is he saying

8    he was actually involved in the investigation himself and he

9    therefore knows that it was the authorities here who

10   allegedly committed the act of negligence you're alleging?

11           MS. PLOTKIN:  Your Honor, Jennifer Plotkin.  I can

12   address that.

13           This former FBI agent would be speaking based on

14   policies and procedures and that it involved the Crimes

15   Against Children --

16           THE COURT:  What firsthand knowledge does he have

17   that this particular investigation was, in fact, being

18   conducted here in D.C., even though the events didn't occur

19   here?

20           MS. PLOTKIN:  Because it was the Crimes Against

21   Children Unit that was notified, and that's in D.C.  And

22   then there was also child pornography obtained and child

23   erotica, which would have been managed by that unit in D.C.

24   as well.

25           THE COURT:  But that --

```
 1              MS. PLOTKIN:  And also, your Honor --
 2              THE COURT:  That situation -- hold on.  That is
 3    the situation in every case where the FBI's involved and
 4    there's alleged exploitation of children of this nature.
 5    The office here is always going to be involved to some
 6    degree.
 7              But it seems to me that doesn't mean that the
 8    investigation itself was investigated here.  Clearly, it
 9    seems to me it would have been either the Southern District
10    of Florida or the Southern District of New York, where those
11    agents would have been the ones who would have been doing
12    the actual investigation.
13              MR. MERSON:  Except again we have this document
14    that says that the investigation was at Washington, D.C.  It
15    was not just --
16              MS. GONZALEZ HOROWITZ:  That's not what that
17    document says, to be clear, your Honor.  That is not what it
18    says.
19              THE COURT:  What's the actual wording of the
20    document?
21              MR. MERSON:  Right on Page 1.
22              MS. PLOTKIN:  It's a criminal investigation
23    that --
24              MR. MERSON:  Letter N, sir.  I mean, it's what it
25    says.
```

```
1              THE COURT:  Does somebody have it to read it?

2              MR. MERSON:  Yes, your Honor.  This is Jordan

3     Merson.

4              I've read it.  But it was defense counsel who made

5     the remark that it doesn't say what I say it said.  And so

6     I'm just -- I thought your question was directed to her.

7     But I'm happy to read it again, because on the very first

8     page of our -- of the document, it says "criminal

9     investigative at Washington, D.C."

10             MS. GONZALEZ HOROWITZ:  Your Honor, I think --

11             MR. MERSON:  And that's all -- that's not what it

12    says, so --

13             MS. GONZALEZ HOROWITZ:  Your Honor, this is

14    Assistant U.S. Attorney Brenda Gonzalez Horowitz.

15             I think context is important here.  This is

16    located on Page 1 of Plaintiffs' opposition.  And what it

17    says is, in -- underlined, it says "criminal investigative."

18    Underneath that, it has another underline and it says "at

19    Washington, D.C.," as in Washington, D.C., is receiving this

20    request.

21             Under that, it has a short paragraph that says,

22    "Approval request for the travel of a special agent to Miami

23    division for the purpose of assisting with indictment

24    preparation, document preparation, chart finalization and to

25    provide testimony at detention hearing."  And this is dated
```

1    May 2007.

2         That is it.  That is the only document that

3    Plaintiffs can point to to somehow support this theory that

4    Washington, D.C., was directing the scope of investigation

5    in the Southern District of Florida.  And that is just

6    incorrect, even if you give this document the most generous

7    reading that Plaintiffs want you to have.

8         MR. MERSON:  I mean, now, your Honor -- this is

9    Jordan Merson -- now we have the Government interpreting

10   what this document says.  And, yeah, we don't have access to

11   more documents because we don't have discovery.  So that's

12   why we don't have more documents.  We just happened to find

13   this one that says what it says.  And the fact that we're,

14   like, both interpreting it, I just think it's premature to

15   move venue when it requires so much explanation that, you

16   know, the defense feels the need to try to interpret what it

17   says based on underlines and where the spacing is.  It says

18   what it says.

19        THE COURT:  Yeah, but I read it differently.  It

20   says "criminal investigative from Miami."  So clearly, it's

21   saying this was something that was taking place in Miami.

22   And then it says "criminal investigative at Washington,

23   D.C.," and then right after that it's talking about approval

24   of a special agent, I assume, to go to Miami to be involved

25   in the investigation.  That's what it seems to be saying to

1    me.

2              MR. MERSON:  Yeah, but "seems to be" and

3    "appears," it's just -- we're trying to interpret a document

4    that -- you know, and at the top it does say "to criminal

5    investigative from Miami."  But who's "to criminal

6    investigative"?  It's in D.C.  So if someone -- if I'm

7    running an investigation in New York and I'm getting

8    documents from Miami, that's what would be happening.  So I

9    think we're all trying to interpret a document that says

10    what it says.  It's just to me just very premature.

11              And, look, I can read the tea leaves.  As I tell

12    my wife, I'm not that dense all the time.  I see where

13    you're going.  I just think that -- and I don't think we're

14    going to change your mind on this document.  But the fact

15    that we're all trying to interpret this document, given

16    everything else here, I just think it's way too early to

17    send this case back to somewhere else when we're going to

18    hear, Oh, it should be somewhere else.

19              THE COURT:  We're arguing -- clearly, it's got to

20    be venued in either the Southern District of Florida or

21    New York, because the alleged victims are -- at least some

22    of them are located in those districts.  So I don't see how

23    the Government could take the position that neither one of

24    those jurisdictions is the appropriate venue for this case.

25              And, understand, I'm not trying to avoid this

1    case.  It sounds like it would be a very interesting case to

2    litigate.  So that's not my objective.  I just think I have

3    to adhere to what the law says.  And I just don't see what

4    we have here as providing a sufficient nexus between the

5    District of Columbia and these events that would justify

6    this Court concluding that it has venue in this case.  And

7    I -- again, I just don't see this one memo as providing a

8    sufficient reason to believe that these events were taking

9    place here in the District of Columbia that resulted in the

10   alleged negligence that's being alleged.

11        MR. MERSON:  Again, I don't think it's just the

12   document.  I think there's other things here.  I think the

13   document is really, really good, which is why we put it on

14   Page 1 of our memo.

15        And I think at this juncture, I think *Spotts v.*

16   *U.S.*, which as I said before is a District of Columbia case,

17   you know, says that the complaint is deemed to be adequate

18   at this point.  So I think it's just premature to boot this

19   case to somewhere else.  And I think this case has had a lot

20   of twists and turns.  And let's take some discovery and see

21   if what the Government is saying is true.  I mean, we're

22   going to get this stuff anyway.  So what's the harm in

23   getting it now and seeing?  And if venue should be somewhere

24   else, we'll stipulate to move it.

25        But --

```
 1            THE COURT:  Well, how do you reconcile the

 2   paragraph that comes after, where it says "criminal

 3   investigative at Washington, D.C."?  It clearly is talking

 4   about authorization of a special agent to go to Miami to be

 5   involved in the investigation down there.

 6            MR. MERSON:  Okay.  So there was an investigation

 7   down there.  It doesn't mean that the investigation wasn't

 8   being run out of Washington, D.C.

 9            THE COURT:  But what you provided doesn't say that

10   either.  All it's saying is that authorization is being

11   given to an agent here in D.C. to go down to Miami to be

12   involved in the investigation.

13            MR. MERSON:  Well --

14            THE COURT:  So it seems that the investigation was

15   being conducted down there in Miami.

16            MR. MERSON:  I don't see where it says that.  I

17   see it says "criminal investigative at Washington, D.C."

18   Everything else we are guessing and trying to figure out

19   what that means, which I think is improper on a 12(b)(3)

20   change-of-venue motion.

21            I think at this point, we have to figure it out.

22   We need discovery.  And I think it's just too soon to make a

23   decision like this on a case like this, and especially after

24   we just spoke with someone from the FBI who says, Yeah, this

25   was run out of D.C.
```

1    THE COURT:  Yes, but again, you're not saying he

2    has personal knowledge that that is, in fact, what occurred

3    in this case.

4    MR. MERSON:  Well, but he has personal knowledge

5    of what is done on these types of investigations.

6    THE COURT:  He doesn't have any personal knowledge

7    about this investigation.

8    MR. MERSON:  He has personal knowledge about how

9    these investigations work and that it would be run out of

10   Washington, D.C.  And that's where the acts or omissions

11   complained of occurred.

12   THE COURT:  Well, again, I just don't find that to

13   be sufficient.  If we were talking about somebody who had

14   firsthand knowledge who said, Yes, I in fact know based upon

15   my firsthand knowledge that this investigation, even though

16   the events took place elsewhere, was, in fact, conducted in

17   D.C., and therefore any acts of negligence or omission

18   occurred in D.C. because this is where the investigation was

19   being conducted, I don't have that before me.

20   So I understand your argument.  But I just don't

21   see how I can conclude that this Court in fact has venue.

22   So the question is, do I transfer it?  If I

23   transfer it, where do I transfer it?  Because as I

24   understand, initially the case was brought in the Southern

25   District of New York, but it was voluntarily dismissed by

1    Plaintiffs' counsel.  So I don't know.  Should it go to

2    Florida or should it go to the Southern District of New

3    York?

4           I don't want to dismiss the case if, in fact, it

5    is going to have a statute of limitations -- create a

6    statute-of-limitations problem.  But on the other hand,

7    we've got to either dismiss it without prejudice and it can

8    be brought by counsel where counsel thinks it's most

9    appropriate or I can transfer it to the location which would

10   be the most appropriate, which in my view would be either

11   the Southern District of New York or the Southern District

12   of Florida.

13          MS. PLOTKIN:  Your Honor, this is Jennifer Plotkin

14   for Plaintiffs again.

15          I also just want to comment that in December of

16   2023, the Senate Judiciary Committee questioned the FBI

17   director, Christopher Wray, about the FBI's role in

18   permitting the continuation of the Epstein sex-trafficking

19   ring.  And by -- that alone would infer that the FBI's

20   director was, in fact, involved.  And the FBI director was

21   in D.C.

22          So that's a party statement.  There's more --

23          THE COURT:  That's always --

24          MS. PLOTKIN:  -- than in other cases.

25          THE COURT:  That's always going to be the case in

1     high-profile cases.  The director of the FBI is inevitably

2     in a case of this nature to some degree going to be

3     involved.

4              MS. PLOTKIN:  That's why I think the uniqueness of

5     this particular case belongs in D.C.  That's what

6     differentiates this case from other cases.  It belongs in

7     D.C.

8              THE COURT:  Well, I disagree with you that it's

9     unique.  We have a lot of high-profile cases, maybe not as

10    high profile as this, although there have been other cases

11    that have had a similar high profile.  I mean, for example,

12    the Oklahoma City bombing case.  I'm sure the director of

13    the FBI was involved in that to some degree, probably a

14    significant degree.  But that doesn't mean that the case

15    would be prosecuted here in D.C.

16             Very well.  Again, I pose the question:  Do I

17    dismiss without prejudice, giving counsel the option of

18    refiling where you think it's appropriate?  Or are you

19    requesting that I transfer it to one of the two other

20    districts?

21             MR. MERSON:  Well, look, I'd rather you transfer

22    than dismiss the case because of the reasons that you've

23    highlighted.

24             But would you give us -- given, you know, some of

25    the comments that you made, would you give us an opportunity

1    to reconfer with our FBI agent and submit a declaration, if

2    appropriate?

3            THE COURT:  Well, again, I mean, is he going to be

4    able to tell me he has direct knowledge of this

5    investigation and therefore can say with specificity based

6    upon his own personal knowledge that the investigation in

7    fact did take place here?  If he's just going to say what

8    general policy is, that doesn't in my view help me.

9            MR. MERSON:  Okay.  Can we have, like, ten days or

10   a week to get back to you on that specific issue?  And then

11   we'll also advise what the answer to your question is?

12           THE COURT:  Any response from Government counsel?

13           MS. GONZALEZ HOROWITZ:  Your Honor, I think that

14   the Court's instincts are correct; and I think that this

15   case, to the extent the Court is not willing to dismiss it,

16   it should be transferred to another district.  Plaintiffs in

17   their opposition already conceded that both the Southern

18   District of New York and the Southern District of Florida

19   would be appropriate venus, that they, you know, would agree

20   to transfer to either of those places.

21           I take no position on, you know, whether there's a

22   preference or not.  I think that it's well within the

23   Court's discretion to determine where transfer would be

24   appropriate.  But I don't think that there should be any

25   further delay.  Plaintiffs have had multiple opportunities

1    to amend their complaint, including in response to our

2    motion to dismiss, and they did not avail themselves of that

3    opportunity.  So I think further delaying would just further

4    delay the case for no reason.

5              So I'd ask that you, you know, order a transfer

6    today, if that is the way that the Court is inclined to

7    rule.

8              THE COURT:  Very well.  I'll give counsel two

9    weeks to assess how you want me to deal with this, whether

10   you want me to dismiss it without prejudice or whether you

11   want me to transfer it and, if I transfer it, which

12   district.

13             So I'll set this for 9:30 on the 30th of June, if

14   that's good.

15             MR. MERSON:  That's fine with the Plaintiffs.

16             MS. GONZALEZ HOROWITZ:  That's fine for the

17   Government.

18             THE COURT:  Very well.  I will talk to you then.

19   We'll do it again remotely as we did today.

20             Thank you.

21             MR. MERSON:  Thank you.

22             MS. GONZALEZ HOROWITZ:  Thank you, your Honor.

23             MS. PLOTKIN:  Thank you.

24             (Proceedings concluded.)

25

1                        **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4      certify that the foregoing constitutes a true and accurate

5      transcript of my stenographic notes, and is a full, true,

6      and complete transcript of the proceedings produced to the

7      best of my ability.

8

9

10                   Dated this 18th day of June, 2025.

11

12               <u>/s/ Lisa Edwards, RDR, CRR</u>
                 Official Court Reporter
13               United States District Court for the
                   District of Columbia
14               333 Constitution Avenue, Northwest
                 Washington, D.C. 20001
15               (202) 354-3269

16

17

18

19

20

21

22

23

24

25